# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

MOSES RABBIT KIRSCHKE,

                Petitioner,              Case Number: 2:10-CV-10229
                                            HON. MARIANNE O. BATTANI

v.

JOHN PRELESNIK,

                Respondent.

_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING A CERTIFICATE OF APPEALABILITY

Moses Rabbit Kirschke, ("Petitioner"), a state prisoner, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his *pro se* application, Petitioner challenges his 2007 St. Clair Circuit Court conviction for one count of armed robbery, MICH. COMP. LAWS 750.529, for which he is serving a term of 25-to-40 years in prison. Petitioner claims that: (1) his statement to police was involuntary; (2) the prosecutor committed misconduct; (3) his trial counsel was ineffective; (4) the cumulative effect of these errors rendered the trial unfair; and (5) he was denied a hearing on the accuracy of the recording of his interrogation by police. For the reasons that follow, the Court finds that habeas relief is not warranted and denies the petition.

## I. Facts

The case against Petitioner arose out of the robbery of a Family Dollar Store in Port Huron in November of 2005.

Prior to Petitioner's jury trial an evidentiary hearing was held on the voluntariness of his statement to police. Detective David Patterson testified that he began the first

interrogation of Petitioner on January 14, 2006, at around 5:00 a.m. at the St. Clair County Sheriff's Department. Petitioner signed a *Miranda* waiver of rights form prior to questioning. The first session lasted almost an hour-long but did not result in any inculpatory statments.

The second interrogation began around 7:00 a.m. and lasted for about four or five more hours. Petitioner again waived his rights prior to the second session. This interrogation was recorded, but because of skips in the recording the exact length of the interview could not be determined.

Petitioner testified at the hearing that he was tired and intoxicated on marijuana, Tequila, beer, and ecstacy pills during the interrogations. He claimed that he was depressed because his girlfriend was planning to abort his child, and he did not understand that he had the right to say that he wanted to stop the interrogation. Petitioner explained that he cooperated because the police told him they would give him some sort of "package deal" if he told them about his involvement in multiple robberies. On cross-examination he admitted that this promise was an implied one.

Detective Patterson testified that Petitioner cried several times during the interrogation. Patterson testified that he would stop asking questions when Petitioner began crying in order to allow him to gain his composure. The officers also allowed Petitioner to call his girlfriend during the interview.

Patterson admitted that he told Petitioner that it would be better to admit to all of the robberies he had been involved with so that they could put them in one report for the prosecutor. But Patterson testified that he never made any offer of leniency. Rather, Patterson explained to Petitioner that if he did not discuss all of the robberies, there was a chance that he might be brought back after one conviction to answer questions about

2

another robbery.

Patterson testified that he had "no doubt" that Petitioner understood his *Miranda* rights. Petitioner never complained of being tired or indicated that he wished for the questioning to end. Patterson explained that the interview finally came to end simply because there was nothing left to talk about, and not at Petitioner's request. Based on his conduct during the interview, Patterson believed that Petitioner was extremely intelligent.

The court denied the motion to suppress the statements. It found that Petitioner had voluntarily waived his rights and that Petitioner was not otherwise coerced into submitting to the interrogation.

At trial, Nicole Olvera testified that she was working at the Family Dollar Store in Port Huron on the evening of November 22, 2005. When Olvera prepared to close the store with Christina Clark, a cashier, a man wearing a ski mask entered the store holding a handgun.

Olvera testified that the man ordered Clark to lay on the floor, and he made Olvera open the safe. The man took Olvera's purse, Clark's cell phone, and over $1,200 in cash. The man then left the store.

Olvera also described an incident occurring on January 7, 2006. On that occasion, a similarly dressed man wearing a mask attempted to enter the store, but the doors had already been locked. After he failed to gain entry, he left the area.

Clark also described the November robbery during her testimony, but neither victim was able to identify Petitioner as the man who robbed them.

Police tracked footprints from the Family Dollar Store after the second incident. The tracks led to a road where a witness said he had seen a tan sedan. When Petitioner was arrested, he was driving a tan car. In the vehicle, police officers found a black hooded shirt

3

and black gloves similar to the ones used in the robbery. They also discovered a black plastic bag containing a baggie full of change. The victims testified that on the day of the first robbery they had run out of change wrappers and had put some change in a baggie. Police also found a pair of running shoes. The prosecutor asserted at trial that if the jury compared the treads on the shoes with photographs of the footprints, they would see that they matched.

After his arrest, Petitioner was brought to the police station for an interview. Petitioner waived his *Miranda* rights and agreed to speak with two detectives. Petitioner admitted to the detectives that he had robbed the Family Dollar Store in November, and that he had received about $1,200 from the safe. Petitioner said he used a toy gun to threaten the clerks. He also admitted that he wore a ski mask and a hooded jacket. Petitioner said that he tried to rob the store a second time but the doors were already locked.  An excerpt of the interview in which the incriminating statements were made was played for the jury.

Based on this evidence, the jury found Petitioner guilty of the November robbery, but they found him not guilty of the second attempted robbery. Petitioner was subsequently sentenced to 25-to-40 years in prison.

Following his conviction and sentence, Petitioner filed an appeal of right in the Michigan Court of Appeals.   Petitioner's appellate brief raised four claims:

> I. The trial court erred by failing to suppress custodial statements that were coerced and involuntary.
>
> II. The prosecutor committed misconduct on several occasions.
>
> III. Petitioner was denied the effective assistance of counsel.

4

IV. The cumulative effect of the errors denied Petitioner a fair trial.

Petitioner filed a pro se supplemental brief that raised an additional claim:

I. The trial court erred when it denied Petitioner's motion for an evidentiary hearing.

The Court of Appeals affirmed Petitioner's conviction in an unpublished opinion. People v. Kirschke, Mich. Ct. App. No. 277853 (July 8, 2008). Petitioner subsequently filed an application for leave to appeal with the Michigan Supreme Court which raised the same claims. The Michigan Supreme Court denied the application in a standard order. People v. Kirschke, Mich. Sup. Ct. No. 137116 (November 25, 2008).

Petitioner also filed a motion for post-conviction relief in the state trial court, but none of the claims raised in that proceeding are present in this case. Petitioner then filed the pending habeas petition, raising the same five claims that he presented to the state courts during his direct appeal.

## II.  Standard

Petitioner's claims are reviewed against the standards established by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (AEDPA). The AEDPA provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court

5

proceedings.

28 U.S.C. § 2254(d).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" Mitchell v. Esparza, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting Williams v. Taylor, 529 U.S. 362, 405-06 (2000)). "[T]he 'unreasonable application' prong of the statute permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." Wiggins v. Smith, 539 U.S. 510, 520 (2003) (quoting Williams, 529 U.S. at 413). However, "[i]n order for a federal court find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous.  The state court's application must have been 'objectively unreasonable.'" Wiggins, 539 U.S. at 520-21 (citations omitted); see also Williams, 529 U.S. at 409.  "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, __ U.S. __, 131 S. Ct. 770, 789 (2011), quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004).  "Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal. . . . As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling

on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Id. at 786-87 (internal quotation omitted).

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. See Williams, 529 U.S. at 412. Section 2254(d) "does not require citation of [Supreme Court] cases – indeed, it does not even require awareness of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." Early v. Packer, 537 U.S. 3, 8 (2002). "[W]hile the principles of "clearly established law" are to be determined solely by resort to Supreme Court rulings, the decisions of lower federal courts may be instructive in assessing the reasonableness of a state court's resolution of an issue." Stewart v. Erwin, 503 F.3d 488, 493 (6th Cir. 2007), citing Williams v. Bowersox, 340 F.3d 667, 671 (8th Cir. 2003); Dickens v. Jones, 203 F. Supp. 2d 354, 359 (E.D. Mich. 2002).

Lastly, a federal habeas court must presume the correctness of state court factual determinations. See 28 U.S.C. § 2254(e)(1). A petitioner may rebut this presumption only with clear and convincing evidence. Warren v. Smith, 161 F.3d 358, 360-61 (6th Cir. 1998).

7

### III. Discussion

### A. Voluntariness of Statement to Police

Petitioner's first habeas claim asserts that his statement to police was involuntary because it was the product of coercive conduct by the police. Respondent asserts that the claim was reasonably adjudicated by the state courts.

The Fifth Amendment to the United States Constitution provides that "no person shall be . . . compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. "To give force to the Constitution's protection against compelled self-incrimination, the [Supreme] Court established in Miranda [ v. Arizona, 384 U.S. 436 (1966)] 'certain procedural safeguards that require police to advise criminal suspects of their rights under the Fifth and Fourteenth Amendments before commencing custodial interrogation.'" Florida v. Powell,     U.S.   ,   , 130 S. Ct. 1195, 1203, 175 L. Ed. 2d 1009 (2010) (quoting Duckworth v. Eagan, 492 U.S. 195, 201 (1989)) (footnote added). "Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." Miranda, 384 U.S. at 444.

The test for voluntariness of a confession is whether

> "the confession [was] the product of an essentially free and unconstrained choice by its maker[.] If it is, if he has willed to confess, it may be used against him. If it is not, if his will has been overborne and his capacity for self-determination critically impaired, the use of his confession offends due process."

Schneckloth v. Bustamonte, 412 U.S. 218, 225-26 (1973) (quoting Culombe v. Connecticut, 367 U.S. 568, 602 (1961)). When determining whether a defendant's will was overborne

in a particular case, courts must assess

> the totality of all the surrounding circumstances — both the characteristics of the accused and the details of the interrogation. Some of the factors taken into account have included the youth of the accused, his lack of education, or his low intelligence, the lack of any advice to the accused of his constitutional rights, the length of detention, the repeated and prolonged nature of the questioning, and the use of physical punishment such as the deprivation of food or sleep.

Id. at 226 (citations omitted). Courts must "determine[] the factual circumstances surrounding the confession, assess[] the psychological impact on the accused, and evaluate[] the legal significance of how the accused reacted." Id. (citing Culombe, 367 U.S. at 603).

"[A] defendant faces an uphill climb when . . . he argues that a confession was involuntary even though he properly received and waived his Miranda rights." Simpson v. Jackson, 615 F.3d 421, 432 (6th Cir. 2010). "[T]he facts of a given interview must be especially egregious to lead to the conclusion that a state court's application of Supreme Court involuntariness case law was unreasonable for purposes of habeas relief . . . ." Id.

In this case, as noted, the trial court held a pretrial evidentiary hearing on Petitioner's motion to suppress his statement to the police. The interviewing detective testified that Petitioner was read his Miranda rights and agreed to make a statement. He testified that the second interrogation lasted about five hours. The officer admitted that Petitioner cried at times during the interview, that he misrepresented the strength of the case they had against Petitioner, and that they encouraged him to talk about all the robberies he was involved in so the police could package them together in one report for the prosecutor. The officer also testified that Petitioner was offered food and drink and was allowed to use the

9

restroom. He testified that Petitioner was also allowed to call his girlfriend during the interview.

Petitioner's testimony largely agreed with the officer's account. However, Petitioner claimed that he was implicitly offered a "package deal" for admitting to both incidents, and he claimed that he was intoxicated from alcohol and drugs at the time of the interview. He also claimed that he was emotionally vulnerable during the interview because he had lost custody of his children, and he was afraid that his girlfriend was going to have an abortion.

After hearing the testimony, the trial court found that Petitioner's statements were not involuntary. The court accepted the officer's characterization that Petitioner was cooperative and was not offered a "package deal." The court acknowledged that five hours constituted a lengthy interview, but it noted that Petitioner was offered refreshments and an opportunity to call his girlfriend. While the trial court did not explicitly make a factual finding with respect to Petitioner's claim that he was intoxicated, it implicitly rejected the testimony when it found:  "[th]here is no indication on the record that [Petitioner] was suffering from any type of mental impairment or fatigue that may have been demonstrated that would cause him to not discuss this matter frankly and candidly." Tr. 11/26/06, at 72-73.

This Court must defer to the trial court's determination of the credibility of the witnesses at the suppression hearing. Ramonez v. Berghuis, 490 F.3d 482, 490 (6th Cir. 2007) (citing Hill v. Brigano, 199 F.3d 833, 840-41 (6th Cir. 1999)). A federal habeas court has "no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them." Marshall v. Lonberger, 459 U.S. 422, 434(1983).

The trial court found that Petitioner is an intelligent person who engaged articulately with the police in a well thought-out discourse as to what his options were with a sound state of mind. Tr. 11/26/06, at 74. Given this factual determination, this Court  concludes from the totality of the circumstances that Petitioner's statement to the police was voluntary and that the decision of the Michigan Court of Appeals upholding the trial court's decision was not unreasonable.   The Court therefore declines to grant relief with respect to this claim.

### B. Prosecutorial Misconduct

Petitioner next asserts that the conduct of the prosecutor rendered his trial unfair. Specifically, Petitioner contends that the prosecutor: (1) improperly argued that he was guilty because another potential suspect was eliminated; (2) appealed to the jury's sympathy for the victims; and (3) during the jury selection process, elicited a promise from the jurors that they would disregard the lack of evidence against Petitioner. Respondent asserts that the Michigan Court of Appeals reasonably rejected this claim.

"Prosecutorial misconduct may warrant habeas relief only if the relevant misstatements were so egregious as to render the entire trial fundamentally unfair to a degree tantamount to a due process deprivation." Caldwell v. Russell, 181 F.3d 731, 736 (6th Cir. 1999).  The determination whether the trial was fundamentally unfair is "made by evaluating the totality of the circumstances." Angel v. Overberg, 682 F.2d 605 (6th Cir. 1982).   The Court must examine "'the fairness of the trial, not the culpability of the prosecutor.'" Pritchett v. Pitcher, 117 F.3d 959, 964 (6th Cir. 1997), (quoting Serra v. Michigan Department of Corrections, 4 F.3d 1348, 1355 (6th Cir. 1993)).  The Court must first consider whether the prosecutor's conduct and remarks were improper, and, if so,

consider the following four factors to determine "whether the impropriety was flagrant" and thus warrants habeas relief:

> (1) whether the conduct and remarks of the prosecutor tended to mislead the jury or prejudice the defendant; (2) whether the conduct or remarks were isolated or extensive; (3) whether the remarks were deliberately or accidentally made; and (4) whether the evidence against the defendant was strong.

Girts v. Yanai, 501 F.3d 743, 758-59 (6th Cir. 2007) (internal quotations omitted).

With respect to Petitioner's first allegation, one of the police officers testified at trial that they believed footprints found outside the Family Dollar store on the night of the second attempted robbery might have matched another man, Miguel Luna. Defense counsel asked on cross-examination about why Luna was eliminated as a suspect, and on re-direct examination the officer testified that Luna's physical appearance did not match the perpetrator because he was over a foot taller than the victims had described. During closing argument defense counsel suggested that police had prematurely abandoned Luna as a suspect. In rebuttal, the prosecutor asserted that the police turned their attention away from Luna because he did not match the physical description given by the victims. Petitioner contends that this argument was improper.

Prosecutors may not misstate the evidence, or argue facts not in evidence, Abela v. Martin, 380 F.3d 915, 929 (6th Cir. 2004), but they have "'leeway to argue reasonable inferences from the evidence' during closing arguments." United States v. Crosgrove, 637 F.3d 646, 664 (6th Cir. 2011) (quoting Byrd v. Collins, 209 F.3d 486, 535 (6th Cir. 2000)). There was nothing improper about the prosecutor's rebuttal argument. It was made in answer to defense counsel's suggestion that the police did not thoroughly investigate the

possibility that Luna was responsible for the crimes, and it was based squarely on the evidence presented at trial.

Next, Petitioner asserts that the prosecutor appealed to the jury's sympathy for the victims during closing argument.  It is well-settled that a prosecutor may not make remarks "calculated to incite the passions and prejudices of the jurors." United States v. Solivan, 937 F.2d 1146, 1151 (6th Cir. 1991). A prosecutor improperly invokes the passions and prejudices of the jury when he or she "calls on the jury's emotions and fears — rather than the evidence — to decide the case." Johnson v. Bell, 525 F.3d 466, 484 (6th Cir. 2008). The prosecutor did not do so in this case. The prosecutor described during closing argument that the victims were put in fear for the lives during the first robbery.

In order to demonstrate that Petitioner was guilty of armed robbery, the prosecutor was required to prove among other things, that Petitioner assaulted the victims – that is, that he placed them "in reasonable apprehension of receiving an immediate battery." People v Grant, 211 Mich. App. 200, 202 (1995). Accordingly, the line of argument was entirely proper and relevant to establishing one of the elements of the charged offense.

Finally, Petitioner asserts that the prosecutor improperly elicited a promise from jurors during jury selection that they could not consider the lack of evidence against him. During jury selection, the prosecutor stated the following:

> And do all of you understand that in a trial obviously you're going to hear a lot of information? You're going to hear from a lot of people. But you might not hear everything that you want to hear. You might think in your mind, gees, I wish I would have heard from this, or I wish I would have seen this type of evidence. But you understand that you can only base your decision on what you hear in the courtroom. Do all of you understand that? Okay.

T I, at 20.

The prosecutor went on to ask a prospective juror whether he would have a problem returning a guilty verdict in the absence of fingerprint evidence, and the juror indicated that he could. The prosecutor then asked several more questions on the juror's understanding of the beyond-a-reasonable-doubt standard and what it entailed.

First, this line of questioning during jury selection was not improper. The prosecutor did not attempt to dilute the burden of proof. Rather, she was attempting to ascertain if any of the prospective jurors had stricter understanding of the standard.

In any event, even if the question constituted a misstatement of the law, it was harmless because the trial court properly instructed the jury on the beyond-a-reasonable-doubt standard, and that the attorneys' statements and arguments are not evidence. Lingar v.. Bowersox, 176 F.3d 453, 460 (8th Cir. 1999); United States v. Gonzalez-Gonzalez, 136 F.3d 6,9 (1st Cir. 1998) (trial court obviated any problem with prosecutor's argument which misstated the reasonable doubt standard, by its instructions on reasonable doubt and its admonition to jurors that the instructions on the law come only from the court and not from counsel); Williams v. Groose, 77 F.3d 259, 262 (8th Cir. 1996)(remarks of prosecutor about burden of proof and reasonable doubt in voir dire did not violate petitioner's due process rights, in light of the court's instructions correctly defining reasonable doubt).

Accordingly, Petitioner is not entitled to habeas relief based on his second claim.

## C.  Ineffective Assistance of Counsel

Next, Petitioner argues that he was denied the effective assistance of counsel.

14

Specifically, Petitioner argues that his trial attorney was ineffective for: (1) failing to file a motion to severe the charges; (2) failing to object to prosecutorial misconduct; (3) failing to hire an expert witness on false confessions; and (4) failing to challenge the admissibility of Petitioner's confession because it was not recorded in its entirety.  Petitioner raised these issues on direct review.  The Michigan Court of Appeals found that all of these allegations were without merit.

The two-prong test set forth in Strickland v. Washington, 466 U.S. 668 (1984), governs claims of ineffective assistance of counsel.  Towns v. Smith, 395 F.3d 251, 258 (6th Cir. 2005).  To show a violation of the Sixth Amendment right to effective assistance of counsel, a petitioner must establish that his attorney's performance was deficient and that the deficient performance prejudiced the defense.  Strickland, 466 U.S. at 687.  An attorney's performance is deficient if "counsel's representation fell below an objective standard of reasonableness."  Id. at 688.  The defendant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  Id. at 687.  "Judicial scrutiny of counsel's performance must be highly deferential."  Id. at 689.  The Supreme Court has "declined to articulate specific guidelines for appropriate attorney conduct and instead [has] emphasized that the proper measure of attorney performance remains simply reasonableness under prevailing professional norms."  Wiggins, 539 U.S. at 521.

An attorney's deficient performance is prejudicial if "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."  Strickland, 466 U.S. at 687.  The petitioner must show "a reasonable probability that, but for counsel's

15

unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Id. at 694.  Unless the petitioner demonstrates both deficient performance and prejudice, "it cannot be said that the conviction [or sentence] resulted from a breakdown in the adversary process that renders the result unreliable."  Id. at 687.

"Surmounting Strickland's high bar is never an easy task."  Padilla v. Kentucky, __ U.S. __, 130 S. Ct. 1473, 1485 (2010).

> [T]he Strickland standard must be applied with scrupulous care, lest 'intrusive post-trial inquiry' threaten the integrity of the very adversary process the right to counsel is meant to serve.  Strickland, 466 U.S. at 689-90.  Even under de novo review, the standard for judging counsel's representation is a most deferential one.  Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. . . . The question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom.  Strickland, 466 U.S. at 690.

> Establishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult.  The standards created by Strickland and § 2254(d) are both "highly deferential," id., at 689, 104 S.Ct. 2052; Lindh v. Murphy, 521 U.S. 320, 333, n. 7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is "doubly" so, Knowles, 556 U.S., at ___, 129 S.Ct. at 1420. The Strickland standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at ___, 129 S.Ct. at 1420.  Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d).  When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.

Richter, 131 S. Ct. at 788.

Petitioner first asserts that his counsel should have moved to sever the armed robbery charge from the attempted armed robbery charge. In rejecting this allegation, the

16

Michigan Court of Appeals held that, under the Michigan Court Rules, Petitioner had a right to severe the charges. The state appellate court found, however, that Petitioner had not overcome the presumption that his counsel's decision to try the charges together was a matter of reasonable trial strategy.

The state court decision was not unreasonable. Trial counsel may have believed joinder of the charges could benefit Petitioner because the prosecutor would have only one chance for conviction instead of multiple chances. The fact that counsel's strategy was ultimately unsuccessful does not mean that counsel was ineffective. See, e.g., Moss v. Hofbauer, 286 F.3d 851, 859 (6th Cir. 2002) ("an ineffective-assistance-of-counsel claim cannot survive so long as the decisions of a defendant's trial counsel were reasonable, even if mistaken"). Petitioner has failed to demonstrate that trial counsel was deficient in this regard.

Petitioner has also failed to establish that he was prejudiced by trial counsel's decision to try the charges together. First, there is the obvious fact that Petitioner was acquitted of the attempted robbery charge. There is no reason to believe that Petitioner would have faired better with the armed robbery charge had the two charges been tried separately. Next, under Michigan Rule of Evidence 404(b), evidence of multiple offenses may be admitted against a defendant to prove a single scheme or plan or to establish identity, even if the charged offenses are severed into multiple trials. See People v. Williams, 483 Mich. 226, 234 (2009). Given that the two incidents occurred at the same store, were perpetrated by a man wearing a ski mask, and were similar in other respects, the trial court could have reasonably admitted some evidence regarding each incident at

17

both trials against Petitioner as evidence of a common plan or scheme. Consequently, Petitioner cannot show that he was prejudiced by counsel's decision not to oppose the joinder of the charges. See Krist v. Foltz, 804 F.2d 944, 947-48 (6th Cir. 1986) (while joinder of two robbery counts may have been improper, similarity of the robberies and their closeness in time would have made evidence of one crime admissible at separate trial of the other such that petitioner was not prejudiced by counsel's failure to seek severance); Woodruff v. Lafler, No. 05-CV-74623-DT, 2007 U.S. Dist. LEXIS 10059, 2007 WL 522704, *5-6 (E.D. Mich. Feb. 14, 2007) (habeas petitioner failed to show prejudice from counsel's failure to seek severance where the acts would have been cross-admissible).

Petitioner next asserts that his counsel was ineffective for failing to object to the misconduct complained of in the proceeding claim.  Because the Court has already determined that the prosecutor's comments did not deprive Petitioner of a fundamentally fair trial, Petitioner is unable to establish that he was prejudiced by counsel's failure to object to the alleged prosecutorial misconduct. Slagle v. Bagley, 457 F.3d 501, 528 (6th Cir. 2006).

Petitioner also asserts that his counsel should have hired an expert witness on false confessions.  Petitioner has offered nothing other than speculation that an expert witness could have been obtained to provide such testimony on the issue of false confessions or that such a witness would testify favorably on his behalf. To present an ineffective assistance of counsel claim based on a failure to call a witness, a defendant must make an affirmative showing as to what the missing evidence would have been and prove that the witness' testimony would have produced a different result. Malcum v. Burt, 276 Supp.

18

2d 664, 679 (E.D. Mich. 2003)(internal citation omitted). Petitioner has failed to demonstrate that he was denied the effective assistance of counsel from his trial counsel's failure to use or call an expert witness concerning the issue of false confessions, because he has failed to present any testimony to establish that an  expert witness could have been obtained to testify favorably for him on this issue. Id. at 682; see also Ben-Yisrayl v. Davis, 245 F. Supp. 2d 960, 969-70 (N.D. Ind. 2002)(capital murder defendant's trial counsel was not ineffective in failing to present expert testimony regarding false confessions; it was too speculative to determine that such evidence would have changed the decision on voluntary confession).  In any event, Petitioner does not explicitly claim that his confession was, in fact, false. Indeed, some of the details contained in the confession could only have been known by the perpetrator. This claim was reasonably rejected by the state courts.

Finally, Petitioner asserts that his counsel should have moved to suppress his statement because there were skips in the video recording.  Petitioner asserts that the police had the ability to record the entirety of both interviews, and the fact that they did not do so is suspicious and suggestive.  Neither federal law nor Michigan law requires that police interrogations of suspects must be audio or viodetaped. See Brown v. McKee, 231 Fed. Appx. 469, 475 (6th Cir. 2007); Crenshaw v. Renico, 261 F. Supp. 2d 826, 837 (E.D. Mich. 2003); People v. Fikes, 228 Mich. App. 178, 183-86 (1998). In light of the fact that the failure by the police to record the entirety of Petitioner's interrogation  provided no basis to exclude his statement, counsel was not ineffective for failing to move for the suppression of the statement on this basis. Brown, 231 Fed. Appx. at 475.

Accordingly, Petitioner is not entitled to relief on his ineffective assistance of counsel

19

claim.

## D. Cumulative Error

Petitioner alleges that he was deprived of a fair trial because of cumulative error. The Sixth Circuit has expressed doubt that about the validity of the argument that cumulative errors may warrant habeas relief in the post-AEDPA era. See Lorraine v. Coyle, 291 F.3d 416, 447 (6th Cir. 2002) ("The Supreme Court has not held that distinct constitutional claims can be cumulated to grant habeas relief"); Moore v. Parker, 425 F.3d 250 (6th Cir. 2005)(same). Moreover, even if such a claim could merit habeas relief, the Court does not find that errors were committed when considered separately or together that abridged Petitioner's constitutional rights. Petitioner is not entitled to habeas relief on his cumulative errors claim.

## E. Motion for Evidentiary Hearing

Petitioner's last claim asserts that the trial court erred when it failed to hold an evidentiary hearing on the authenticity and accuracy of the recording of Petitioner's interrogation. The trial court denied a hearing on the ground that there was no significant dispute as to what occurred during the interrogation.

Petitioner does not allege how the recording was altered or what the allegedly missing parts would reveal. But in any event, the trial court's failure to hold an evidentiary hearing on the claim, even if erroneous under state law, would not entitle Petitioner to habeas relief. See Chaussard v. Fulcomer, 816 F.2d 925, 932 (3d Cir. 1987); Edwards v. State of Kansas, 751 F. Supp. 197, 199 (D. Kan. 1990). The failure of a state court to hold a hearing does not deprive a habeas petitioner of the effective assistance of counsel, the

20

right to a meaningful appeal, or any other constitutional right. See <u>Dowdy v. Sherry</u>, No. 06-CV-10735, 2008 U.S. Dist. LEXIS 105630, 2008 WL 5188827, at *5 (E.D. Mich. Dec. 10, 2008) (Roberts, J.); <u>Ezell v. Cason</u>, No. 1:04-CV-214, 2007 U.S. Dist. LEXIS 10318, 2007 WL 518853, at *7-*8 (W.D. Mich. Feb. 14, 2007); <u>May v. Renico</u>, No. 00-10420-BC, 2002 U.S. Dist. LEXIS 23566, 2002 WL 31748845, at *4 (E.D. Mich. Nov. 12, 2002) (Lawson, J.). Accordingly, Petitioner is not entitled to habeas relief on this claim.

### IV. Certificate of Appealability

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability (COA) is issued under 28 U.S.C. § 2253.  Rule 11 of the Rules Governing Section 2254 Proceedings now requires that the Court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."

A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right."   28 U.S.C. §2253(c)(2).   A petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel,* 529 U.S. 473, 484 (2000) (citation omitted).

The Court concludes that reasonable jurists would not debate the conclusions that the petition fails to state a claim upon which habeas corpus relief should be granted, and denies a certificate of appealability on all claims.

### V.  Conclusion

For the foregoing reasons, **IT IS ORDERED** that the petition for a writ of habeas

21

corpus is **DENIED** and the matter is **DISMISSED WITH PREJUDICE.**

     **IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED** for Petitioner's claims.


                          s/Marianne O. Battani
                          MARIANNE O. BATTANI
                          UNITED STATES DISTRICT JUDGE

DATE: May 30, 2012


CERTIFICATE OF SERVICE

     I hereby certify that on the above date a copy of this Order was served upon the Petitioner via ordinary U.S. Mail, and Counsel for the Respondent, via the Court's ECF Filing System.

                          s/Bernadette M. Thebolt
                          Case Manager